**John DOE and Kenneth Earman, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 10–617 C.**

United States Court of Federal Claims.

July 30, 2012.

Alan Saltman, Washington, DC, for plaintiffs. Richard W. Goeken, Washington, DC, of counsel.

Sharon A. Snyder, United States Department of Justice, with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director, Washington, DC, for defendant.

## OPINION AND ORDER

BUSH, Judge.

Now pending before the court is defendant's motion to dismiss for lack of subject matter jurisdiction, which has been fully briefed and is ripe for a decision by the court. Because the court possesses subject matter jurisdiction over all but one of the claims set forth in the third amended complaint, defendant's motion to dismiss that complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) is granted in part and denied in part.

## BACKGROUND [1]

The initial complaint in this matter was filed by plaintiff John Doe on September 14, 2010. In that complaint, Mr. Doe sought to recover damages for the government's alleged breach of a contract to make payments to him pursuant to the Conservation Security Program (the CSP), 16 U.S.C. §§ 3838–3838c (2006) (the CSP statute), 7 C.F.R. §§ 1469.1–1469.36 (2012) (the CSP regulations). The CSP is administered by the Natural Resources Conservation Service (NRCS) within the United States Department of Agriculture (USDA).

On September 30, 2010, Mr. Doe filed a motion for class certification along with a supporting memorandum. In the motion for class certification, Mr. Doe requests that the court designate him as the representative of a class of similarly situated plaintiffs, and appoint his counsel as attorneys of record for the proposed class. Plaintiff also filed an amended complaint for the purpose of accommodating potential class members in his proposed class action.[2]

On November 15, 2010, defendant filed an unopposed motion to stay all proceedings in the subject matter. Therein, defendant, on behalf of both parties, requested that the court stay any further proceedings in this case pending the court's ruling on defendant's motion to dismiss the complaint in the related case of *Meyers, et al. v. United States*, No. 09–538C. Because the legal and factual issues in this case were closely related to those involved in *Meyers*, the court granted the motion to stay this case on November 17, 2010.

On December 23, 2010, the court dismissed the complaint in *Meyers* in its entirety, *see Meyers v. United States*, 96 Fed.Cl. 34 (2010), and the plaintiffs in that case filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit (CAFC Appeal No. 2011–5056). Because the court believed the outcome of the *Meyers* appeal could have a significant impact on the parties' litigation of this case, the case remained stayed pending a decision on the appeal.

---

1. The facts recounted here are taken from the parties' submissions and are undisputed unless otherwise noted. The court makes no findings of fact in this opinion.

2. Because the amended complaint was filed within twenty-one days of the original complaint, plaintiff was not required to seek leave of the court to file the amended complaint. *See* RCFC 15(a)(1). Proceedings on plaintiffs' motion for class certification remain suspended pursuant to the court's order of June 21, 2011.

The appeal was voluntarily dismissed on May 9, 2011. *Meyers v. United States*, 420 Fed. Appx. 967 (Fed.Cir.2011).

The court lifted the stay of proceedings in this case on June 29, 2011. Pursuant to the court's scheduling order entered on that date, Mr. Doe filed his second amended complaint on June 29, 2011, and defendant then filed a motion to dismiss that amended complaint under RCFC 12(b)(1) and RCFC 12(b)(6) on August 29, 2011. In its motion to dismiss, defendant also argued that Mr. Doe had failed to allege the class action criteria required under RCFC 23, and that the second amended complaint was therefore subject to dismissal on that basis as well.

Mr. Doe did not respond to defendant's motion to dismiss, but instead filed, with the government's consent, a third amended complaint on September 30, 2011. In that complaint, a new plaintiff—John Earman—was added to the caption, and plaintiffs set forth the RCFC 23 class action requirements that had been omitted from the earlier versions of the complaint. The third amended complaint contains five counts. In the first count, plaintiffs allege that the government underpaid Mr. Earman and other similarly situated plaintiffs in fiscal years (FY) 2005 and 2006, and thus argue that those underpayments breached their CSP contracts in those years. In the second count, plaintiffs argue that the payment rates utilized by NRCS were contrary to the minimum rates imposed by the CSP statute and thus breached all CSP contracts. In the third count, presented as an alternative to Count II, plaintiffs argue that the payment rates utilized by the NRCS in FY 2007 and thereafter were contrary to the minimum rates imposed by the CSP statute and, because the program was not subject to any spending caps after May 25, 2007, the improper payment rates breached all CSP contracts in those years. In the fourth count, plaintiffs contend that they possessed a right to renew their CSP contracts under the CSP statute, and that the subse-quent abrogation of that right constituted an anticipatory repudiation and breach of plaintiffs' CSP contracts. Finally, in the fifth count, plaintiffs argue in the alternative to Count IV that the elimination of plaintiffs' right to renew their CSP contracts effected a taking of private property requiring just compensation.

On December 2, 2011, defendant filed a motion to dismiss the complaint or, in the alternative, for summary judgment. In its motion, the government seeks dismissal of all counts for lack of subject matter jurisdiction under RCFC 12(b)(1). In that regard, defendant argues that plaintiffs were required to exhaust their administrative remedies before commencing suit in this court and failed to do so. In addition, defendant seeks to dismiss two counts of the third amended complaint— Counts II and III—for failure to state a claim under RCFC 12(b)(6). Finally, defendant concurrently moves for summary judgment on the three counts of the complaint— Counts I, IV, and V—not covered by its RCFC 12(b)(6) motion.

On December 22, 2011, pursuant to RCFC 56(d), plaintiffs moved to stay proceedings in this matter to afford the parties an opportunity to conduct discovery. In that motion, plaintiffs argued that they would be unable to respond to defendant's motion for summary judgment without conducting discovery on a number of issues set forth in an affidavit attached to plaintiffs' motion. Because all of plaintiffs' discovery requests were related to the merits of their claims, and had no relevance to the separate issue of whether this court possessed subject matter jurisdiction over those claims, the court denied the motion to stay proceedings and ordered plaintiffs to respond to defendant's motion to dismiss under RCFC 12(b)(1).[3] Plaintiffs responded to defendant's motion to dismiss on March 30, 2012, and defendant filed its reply on April 9, 2012.

---

**3.** The court suspended briefing on defendant's motion to dismiss under RCFC 12(b)(6), as well as its motion for summary judgment, pending the resolution of the jurisdictional issues raised in defendant's motion to dismiss under RCFC 12(b)(1). While the court denied plaintiffs' mo-tion to stay proceedings to conduct discovery, the court noted that "plaintiffs are free to file a renewed motion for that purpose, if appropriate, following the court's resolution of the jurisdictional issues in this case." Order of March 9, 2012, at 7 n. 5.

## DISCUSSION

### I. Standard of Review

 In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). The relevant issue in a motion to dismiss under RCFC 12(b)(1) " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Patton v. United States*, 64 Fed.Cl. 768, 773 (2005) (quoting *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–62 (Fed.Cir. 1998); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991)), *aff'd in relevant part*, 281 F.3d 1376 (Fed.Cir.2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

### II. Analysis

 In its motion to dismiss, the government asserts that the court must dismiss all of the claims set forth in the third amended complaint because plaintiffs failed to exhaust their administrative remedies before commencing suit in this court. Plaintiffs respond that they were not required to pursue an administrative appeal of the governmental actions challenged in this suit, nor were they permitted to do so, under the controlling regulations. For the reasons discussed below, the court holds that plaintiffs were not required to exhaust any administrative remedies before pursuing the claims contained in Counts II through V of the third amended complaint. The court further holds, however, that plaintiffs were required to exhaust their administrative remedies for the claim set forth in Count I of the complaint before filing this suit.

 It is well established that when a federal government contract contains a disputes clause setting forth specific administrative remedies, the contractor must exhaust those remedies before pursuing judicial relief. *Me. Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1340 (Fed.Cir.2000) (citation omitted). Furthermore, and of significance here, when Congress has required the exhaustion of administrative remedies as a prerequisite to judicial review of an agency decision, the failure of a plaintiff to exhaust such remedies deprives the reviewing court of subject matter jurisdiction over its claims. *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Congress has mandated that all administrative appeal procedures established by the Secretary of Agriculture must be exhausted before a suit may be filed against the USDA or any of its individual agencies. *See* 7 U.S.C. § 6912(e) (2006); *Ace Prop. & Cas. Ins. Co. v. United States*, 60 Fed.Cl. 175, 181 (2004) (holding that section 6912(e) requires the exhaustion of administrative remedies as a jurisdictional prerequisite to suit in this court).

In the present case, defendant notes that the CSP implementing regulations state that

> [b]efore a participant can seek judicial review of any action taken under this part, the participant must exhaust all administrative appeal procedures set forth in paragraph (a) of this section, and for purposes of judicial review, no decision will be a final agency action except a decision of the Chief under these procedures.

7 C.F.R. § 1469.31(c). Paragraph (a) of section 1469.31, in turn, states that "[a]n applicant or a participant may obtain administra-

tive review of an adverse decision under CSP in accordance with parts 11 and 614, Subparts A and C, of this title, except as provided in paragraph (b) of this section." *Id.* § 1469.31(a).[4]

Defendant also points out that the appendix attached to each of plaintiffs' CSP contracts provides that

> [t]he Participant may appeal an adverse decision under this Contract in accordance with the appeal procedures set forth at 7 CFR part 11, Subpart A and part 614. Pending the resolution of an appeal, no payments shall be made under this agreement. Before a Participant seeks judicial review, the Participant must exhaust all appeal rights granted within these regulations.

Def.'s Mot. App. at A00117.

In accordance with the foregoing, the CSP regulations and the contract appendix both require program participants to exhaust available administrative remedies under parts 11 and 614 in order to file suit in any court. There is no dispute as to whether plaintiffs made any attempt to do so here. Plaintiffs argue, however, that the types of claims raised in the third amended complaint may not be appealed under either part 11 or part 614, and are therefore expressly excluded from the exhaustion requirements under the CSP regulations. The court agrees that the claims contained in Counts II through V of the complaint were not subject to the exhaustion requirements set forth in the CSP regulations or in the appendix to the CSP contracts, and that those claims were thus not subject to administrative resolution under either part 11 or part 614. In contrast, the court concludes that plaintiffs were required to exhaust their administrative remedies with respect to the claim contained in Count I of the complaint, and further holds that the claim in that count was appealable under parts 11 and 614.

## A. The CSP Regulations

Section 1469.31 of the CSP regulations requires all program participants to exhaust administrative remedies available under part 11 and part 614 of title 7 before seeking judicial review in any court, 7 C.F.R. § 1469.31(c). That section, however, goes on to prohibit administrative appeal of the following types of agency decisions:

> (1) Payment rates, payment limits, and cost-share percentages;
>
> (2) Eligible conservation practices; and,
>
> (3) Other matters of general applicability.

*Id.* § 1469.31(b). Plaintiffs argue that the claims set forth in their third amended complaint relate to payment rates and other matters of general applicability, which paragraph (b) of section 1469.31 expressly excludes from the exhaustion requirements of the CSP regulations.

When it promulgated the CSP regulations, NRCS explained why section 1469.31 does not permit administrative appeals of payment rates or other generally applicable matters:

> These provisions do not allow appeal of payment rates. Commenters asserted that appeals should be allowed regarding payment rates. NRCS made no changes based on these comments. As indicated in Section 1469.31, participants are not allowed to appeal matters of general applicability. Such appeals would affect all participants and would be administratively unworkable.

Conservation Security Program Interim Final Rule, 70 Fed. Reg. 15201, 15207 (Mar. 25, 2005).

Defendant now concedes that Counts IV and V of the third amended complaint relate to matters of general applicability—*i.e.,* whether all CSP contractors possessed the right to renew their contracts, and whether Congress breached all CSP contracts or took the property of all CSP contractors when it abrogated that asserted right. Defendant has therefore withdrawn its jurisdictional challenges to Counts IV and V of the third amended complaint. Def.'s Reply at 7–8. However, defendant continues to argue that plaintiffs were required to exhaust their administrative remedies for the remaining

---

4. Paragraph (b), discussed in detail *infra,* sets forth three categories of agency decisions that cannot be administratively appealed.

counts of the third amended complaint because those claims challenge "decisions [that] are made individually based upon numerous factors that include where the land is located and what conservation practices will be implemented." *Id.* at 3. For the reasons discussed below, the court holds that Count I of the third amended complaint does not involve any matters of general applicability, or other paragraph (b) exceptions, and was therefore subject to the exhaustion requirements described in the contract appendix and in the CSP regulations. Counts II and III of the third amended complaint, however, challenge the general payment rates used by NRCS and are not subject to the exhaustion requirements because they do involve matters of general applicability.

■ Count I of the third amended complaint alleges that "[f]or 2005, owing to an alleged lack of funds, NRCS paid Earman $2,648 less than the full amount set out in his CSP contract." 3d Am. Compl. ¶ 52. That count of the complaint also alleges that "[o]wing to an alleged lack of funds, NRCS also failed to pay 4,874 other CSP contract holders the full amount set out in their CSP contracts." *Id.* ¶ 53. In order to prove those allegations, plaintiffs would be required to present evidence about the terms of each individual CSP contract, as well as evidence about how much each CSP contractor was paid pursuant to those contracts. Nothing in Count I of the complaint challenges the general payment rates employed by NRCS or addresses any other matter of general applicability. *See id.* ¶¶ 52–56. Indeed, the discovery requested by plaintiffs in connection with Count I reinforces the individualized nature of that claim. *See* Saltman Decl. ¶¶ 8–10 (requesting copies of any documents reviewed by NRCS in determining that Mr. Earman had been paid the amount set forth in his contract, as well as a copy of the contract itself). The fact that plaintiffs have alleged that thousands of individuals were not paid the amounts set forth in their CSP contracts does not mean that those breach claims are based upon a matter of general applicability. Because Mr. Earman could have pursued an administrative appeal of the agency decision challenged in Count I under section 1469, he was required to do so before

seeking judicial relief. His failure to exhaust his administrative remedies divests this court of subject matter jurisdiction over that count of the third amended complaint. *See, e.g., Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.").

■ In contrast to Count I, Counts II and III of the third amended complaint are based on a matter of general applicability—specifically, the rates used by NRCS in calculating payments to CSP contractors. Plaintiffs argue that all CSP contracts incorporate the specific payment rates set forth in the CSP statute, and that the use of lower rates by NRCS—based on the uniform application of reduction factors—breached all CSP contracts. Because the CSP regulations expressly prohibit administrative appeals of payment rates, 7 C.F.R. § 1469.31(b)(1), or any other matter of general applicability, *id.* § 1469.31(b)(3), plaintiffs were not required to exhaust any administrative remedies for the claims set forth in Counts II and III of the third amended complaint.

The court is not persuaded by defendant's argument that Counts II and III do not relate to matters of general applicability for the mere reason that payments to CSP contractors are based, in part, on individual factors such as the location of each contractor's land and the conservation practices adopted by each contractor. While the precise amount owed to a specific CSP contractor will obviously be calculated by factoring in such individual particulars as land location and conservation practices, the dispute raised by plaintiffs in Counts II and III centers on a challenge to the overall payment rates mandated by the government, not individual factors. Accordingly, the court holds that those counts of the complaint are based upon the payment rates used by NRCS, which were adopted on a uniform basis for all CSP contractors within each tier of the program. In sum, plaintiffs were not required to administratively appeal the payment rates

adopted by NRCS before pursuing those claims here.

## B. Informal Appeals under Part 614

■ The court has determined that the CSP regulations and the appendix to the CSP contracts required plaintiffs to exhaust their administrative remedies with respect to Count I of the third amended complaint before pursuing that claim in a judicial forum. The court, in turn, must also determine whether the relief sought by plaintiffs fell within the parameters of administrative review provided by part 11 and part 614. For the reasons discussed below, the court holds that plaintiffs could have pursued an administrative appeal of the legal claim set forth in Count I of the third amended complaint. Because administrative remedies were available to plaintiffs under part 11 and part 614, their failure to pursue those remedies before commencing suit divests the court of jurisdiction over Count I of the complaint.

Part 11 and part 614 of title 7 establish two distinct avenues for administrative appeals of agency decisions. Part 614 sets forth an informal appeal process that is limited to adverse decisions and technical determinations rendered by NRCS, 7 C.F.R. § 614.1 (2012), including decisions under the CSP, *id.* § 614.3 (2012). Part 614 goes on to further exclude certain categories of those decisions from the informal appeal process, including:

(1) Any general program provision, program policy, or any statutory or regulatory requirement that is applicable to all similarly situated participants[;]

(2) Mathematical or scientific formulas established under a statute or program regulation and a program decision or technical determination based solely on the application of those formulas;

. . . . .

(5) Disapproval or denials of assistance due to lack of funding or lack of authority.

*Id.* § 614.4 (2012). When NRCS established the informal appeal procedure under part 614, it explained that

program decisions or technical determinations made pursuant to statutory provisions or regulations that are not dependent upon a unique set of facts are generally not appealable. Thus, a decision is not appealable if it is based upon general program policy, a statutory or regulatory requirement that is applicable to all similarly situated participants, or technical standards and equations.

Natural Resources Conservation Service Appeal Procedures, 71 Fed. Reg. 28239, 28242 (May 16, 2006).

Plaintiffs argue that they could not have pursued an administrative appeal for any of their claims under part 614 because their claims are based on: (1) a general NRCS policy applicable to all similarly situated participants; (2) the application of mathematical formulas; and (3) a denial of assistance due to an asserted lack of funding. Plaintiffs' arguments in this regard, however, do not withstand scrutiny with respect to Count I.

As noted above, Count I of the complaint does not challenge the payment rates used by the agency (*i.e.,* a "mathematical formula"), nor does it relate to any other general NRCS policy. Instead, the complaint asserts that the agency failed to pay Mr. Earman and other similarly situated CSP contractors the amounts set forth in their individual CSP contracts. *See* 3d Am. Compl. ¶¶ 52–56. While plaintiffs assert that "an alleged lack of funds" was the government's purported justification for those alleged breaches, *id.* ¶¶ 52–53, 55, that does not change the essential nature of the claim set forth in Count I. Plaintiffs do not contend in Count I that Mr. Earman applied for assistance and was denied such assistance by the agency due to a lack of funds; rather, plaintiffs allege that NRCS contractually agreed to make a precise payment to Mr. Earman and failed to do so. None of the exclusions set forth in part 614 would have precluded an administrative appeal of that alleged breach. Thus, plaintiffs were required under section 1469.31, as well as the contract appendix, to pursue such remedies before filing suit in any court.[5]

5. Because Counts II through V of the third

amended complaint are not subject to the ex-

## C. Formal Appeals under Part 11

██ Part 11 of title 7 of the Code of Federal Regulations, in contrast to part 614, establishes a process for formal appeals to the National Appeals Division (NAD) of the USDA. Participants in NRCS programs are not required to pursue an informal appeal of an adverse agency decision under part 614 before commencing a formal appeal under part 11. *See* 7 C.F.R. § 11.5(b) (2012) ("With respect to . . . adverse decisions of all other agencies, a participant *may* request an agency informal review of an adverse decision of that agency prior to appealing to NAD.") (emphasis added). However, when a participant elects to pursue an informal appeal under part 614, that participant is also required to exhaust the formal appeal procedures set forth in part 11 before seeking judicial review of the challenged agency decision. *See id.* § 614.17 (2012) ("A participant *must receive a final determination from NAD* pursuant to 7 CFR part 11 prior to seeking judicial review."). The district courts have jurisdiction over appeals of NAD decisions, *id.* § 11.13(a) (2012), but a program participant may not seek such review until NAD has rendered a final decision pursuant to the procedures set forth in part 11, *id.* § 11.13(b) (2012).

Defendant notes that NAD is expressly authorized to hear appeals from an adverse agency decision that is—like the agency action challenged here—related to "[t]he making or amount of payments or other program benefits to a participant in any program of an agency. . . ." 7 C.F.R. § 11.3(a)(4) (2012). Plaintiffs argue, however, that the procedures established under part 11 expressly exclude appeals that involve matters of general applicability. *See id.* § 11.6(a)(2) (2012) (stating that "[t]he Director shall determine

whether the decision [being appealed to NAD] is adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal").

For the same reasons noted above with respect to part 614, the legal claims set forth in the first count of the third amended complaint are not excluded from the types of government decisions appealable to NAD under part 11. Rather, the breach claims set forth in Count I do not challenge the agency's payment rates and are not otherwise matters of general applicability, but instead relate only to Mr. Earman and the other program participants whose contracts were alleged to have been breached by the government. Since the breach actions challenged were uniquely adverse to the individual participants, plaintiffs could have pursued an administrative appeal of those claims under part 11, and they were required to do so under applicable provisions of section 1469.31 and the contract appendix before seeking judicial review.

In sum, plaintiffs were required to exhaust their administrative remedies before pursuing the claims set forth in Count I before a judicial forum. For that reason, Count I of the third amended complaint must be dismissed without prejudice for lack of subject matter jurisdiction. The other remaining counts of the complaint were not subject to the exhaustion requirements set forth in the CSP regulations or in the appendix to the CSP contracts, and therefore plaintiffs' failure to pursue an appeal of those claims at the agency level does not bar the litigation of those claims here. Thus, Counts II through V of the third amended complaint survive the government's motion to dismiss for lack of

---

haustion requirements of section 1469.31 or the CSP contract appendix, the court need not address whether plaintiffs could have pursued an administrative appeal under part 11 or part 614. Nonetheless, the court notes that an administrative appeal of the claims described in those counts would appear to be excluded under part 614 as based upon a "general program provision, program policy, or any statutory or regulatory requirement that is applicable to all similarly situated participants[.]" 7 C.F.R. § 614.4(a)(1). Nor does it appear that those claims could have been properly appealed under part 11, which

prohibits administrative appeals of matters of general applicability. *See id.* § 11.6(a)(2) (2012). Part 11 also states that "[t]he procedures contained in this part may not be used to seek review of statutes or USDA regulations issued under Federal law." *Id.* § 11.3(b) (2012). Counts II and III of the complaint challenge USDA regulations—*i.e.*, the payment rates utilized by NRCS—while Counts IV and V challenge a federal statute—*i.e.*, the provision in the 2008 Farm Bill that prohibits the renewal of CSP contracts after September 30, 2008.

subject matter jurisdiction under RCFC 12(b)(1).

### III. Further Proceedings in this Case

As previously noted, on December 22, 2011, plaintiffs filed a motion to suspend all proceedings with respect to defendant's motion to dismiss and for summary judgment in order to conduct discovery. Defendant opposed plaintiffs' motion and argued that discovery was neither necessary nor appropriate before the court addressed the government's dispositive motions. The court denied plaintiffs' motion to suspend proceedings and conduct discovery, but also informed plaintiffs that they were "free to file a renewed motion [to conduct discovery], if appropriate, following the court's resolution of the jurisdictional issues in this case." Order of March 9, 2012, at 7 n. 5. The court has resolved those jurisdictional issues in this opinion. Rather than directing plaintiffs to renew their earlier motion, and requiring the parties to brief that motion a second time, in the interest of judicial economy the court will simply address that request *sua sponte* based on the parties' prior briefing on the denied motion.

Although the court previously denied plaintiffs' motion to stay further proceedings on defendant's motion for summary judgment in order to conduct discovery, now that the jurisdictional issues have been resolved, the court does believe that some limited discovery by the parties is appropriate at this time. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that "summary judgment [must] be refused where the non-moving party has not had the opportunity to discover information that is essential to his opposition"); *Dunkin' Donuts of Am., Inc. v. Metallurgical Exoproducts Corp.*, 840 F.2d 917, 919 (Fed.Cir.1988) ("The Supreme Court has made clear that summary judgment is inappropriate unless a tribunal permits the parties adequate time for discovery." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))). Because the parties have not conducted any factual discovery in this case, the court will continue the current stay of proceedings on defendant's remaining dispositive motions until the parties have had an opportunity to do so.[6] The court will not, however, allow plaintiffs to conduct all of the discovery requested in their earlier motion to stay proceedings on the government's motion for summary judgment.

Because the court does not possess subject matter jurisdiction over Count I of the third amended complaint, plaintiffs may not conduct the discovery they sought in connection with that count of the complaint. *See* Saltman Decl. ¶¶ 3–12. Plaintiffs did not request any discovery related to Count II of the complaint, so the court will not allow any discovery in connection with that count of the complaint.

With respect to Count III of the third amended complaint, plaintiffs sought the following:

> Plaintiffs seek discovery in the form of a request for the production of documents and possible 30(b)(6) depositions as to factual basis for defendant's contention that the passage of P.L. 110–28 provided it with the specific sum of $37.9 million and not access to much more funds in 2007 and subsequent years.

Saltman Decl. ¶ 16. Defendant argues that the discovery requested by plaintiffs is irrelevant to their breach claims and is not responsive to the substance of the government's motion for summary judgment on those

---

6. Defendant argues, based on statements contained in plaintiffs' briefing, that the claims set forth in the third amended complaint involve "purely legal issues" that may be resolved without any factual discovery. Defendant also asserts that the court should, at a minimum, resolve its motion to dismiss under RCFC 12(b)(6) before proceeding to its motion for summary judgment. If defendant had moved to dismiss the entire complaint pursuant to RCFC 12(b)(6), then its suggestion that the court address that motion before the parties conduct any discovery might be a more efficient means of resolving this suit. As it stands, however, defendant has moved to dismiss only two counts of the complaint—Counts II and III—under RCFC 12(b)(6). For that reason, the court believes that addressing both motions at once, following some limited discovery by the parties, will promote judicial efficiency and best conserve the resources of the parties and the court.

claims. Defendant further asserts that factual discovery is not necessary to determine whether the CSP was subject to any spending limitations during any particular period of time. Rather, according to the government, the amount of funding available for the program can be determined solely by reference to publicly available documents.

The relevance of plaintiffs' discovery request for Count III to its opposition to defendant's motion for summary judgment is not entirely clear to the court. Nonetheless, given the limited nature of that discovery, and the broad standards for discoverable material set forth in RCFC 26(b)(1), the court will allow plaintiffs to pursue that line of inquiry.

■■■ With respect to Counts IV and V of the third amended complaint, plaintiffs request discovery related to the manner in which the government has interpreted certain provisions of the CSP contracts, as well as the government's administration of those contracts. *See* Saltman Decl. ¶¶ 17–28. The government argues in its motion for summary judgment that the CSP contracts do not contain a right of renewal, and it appears that plaintiffs' requested discovery is designed to obtain extrinsic information for the purpose of supplementing or modifying the express terms of their CSP contracts.

■■■ When "the terms of a contract are clear and unambiguous, they must be given their plain meaning—extrinsic evidence is inadmissible to interpret them." *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375 (Fed.Cir.2004) (citation omitted). Plaintiffs have not identified any ambiguous language in their CSP contracts that would warrant the use of extrinsic evidence to construe such terms. The cases cited by plaintiffs in their reply in support of their request for discovery are not to the contrary. *See,*

*e.g., TEG–Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed.Cir.2006) ("Trade practice and custom may not be used ... to create an ambiguity where a contract was not reasonably susceptible of differing interpretations at the time of contracting.") (citation and punctuation omitted). Because plaintiffs have not pointed to any ambiguous terms in their CSP contracts, or established any other basis for the introduction of extrinsic evidence to interpret their contracts, the court will not allow them to conduct the discovery proposed for Counts IV and V of the third amended complaint.

For the foregoing reasons, plaintiffs may pursue the discovery described in paragraph 16 of the declaration attached to its earlier motion, filed December 22, 2011, to stay proceedings on the government's motion for summary judgment. The court therefore directs the parties to confer and submit a proposed schedule for that discovery.[7] The court will then issue an order establishing a schedule for discovery and for briefing on the remaining dispositive motions.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss under RCFC 12(b)(1), filed December 2, 2011, is **GRANTED** in part, as to Count I of the third amended complaint, and **DENIED** in part, as to all other remaining counts;

(2) Pursuant to RCFC 54(b), insofar as there is no just reason for delay,[8] the Clerk's Office is directed to **ENTER** judgment for defendant as to Count I of the third amended complaint, and to **DISMISS** that count without prejudice; and

7. Defendant has taken the position that no discovery is necessary prior to the resolution of its dispositive motions. However, in light of the court's decision to allow plaintiffs to conduct limited discovery with respect to Count III of the third amended complaint, if the government deems it necessary, defendant is hereby permitted to conduct its own discovery as long as it is within the scope of the narrow issue addressed by plaintiffs' request for discovery on that count of the complaint.

8. Because the court has held that plaintiffs must exhaust their administrative remedies before seeking relief in any judicial forum, the court believes that there is no just reason for delay in the entry of final judgment on Count I. The immediate dismissal of that count will permit plaintiffs to pursue their administrative remedies without waiting until proceedings on the other counts in the third amended complaint have concluded in this court.

(3) The parties are directed to **CONFER** for the purpose of establishing a schedule for limited discovery on Count III, and shall **FILE** a **Joint Status Report** no later than **August 13, 2012** informing the court of that discovery schedule.