# United States Court of Appeals for the Federal Circuit

———————————

**ST. BERNARD PARISH GOVERNMENT,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2018-1204

———————————

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00637-EJD, Senior Judge Edward J. Damich.

———————————

Decided: February 15, 2019

———————————

WILLIAM MARTIN MCGOEY, Civil Division, St. Bernard Parish District Attorney's Office, Chalmette, LA, argued for plaintiff-appellant.

RETA EMMA BEZAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by KENNETH DINTZER, ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT.

———————————

Before LOURIE, BRYSON, and WALLACH, *Circuit Judges.*

BRYSON, *Circuit Judge.*

St. Bernard Parish in Louisiana ("St. Bernard") has appealed from an order of the Court of Federal Claims dismissing its breach of contract claim for lack of jurisdiction. We affirm.

I

On April 17, 2009, the U.S. Department of Agriculture's Natural Resources Conservation Service ("NRCS") entered into a "Cooperative Agreement" with St. Bernard under the authority of the Federal Grant and Cooperative Agreement Act ("FGCAA"), 31 U.S.C. §§ 6301–08. The agreement provided that, under the provisions of the Emergency Watershed Protection ("EWP") Program, the NRCS was "authorized to assist [St. Bernard] in relieving hazards created by natural disasters that cause a sudden impairment of a watershed."[1]

The agreement provided for certain debris and sediment removal work to be performed in 16 watershed areas, among them the Bayou Terre Aux Boeufs in southeast

---

[1]    "The objective of the EWP Program is to assist sponsors, landowners, and operators in implementing emergency recovery measures for runoff retardation and erosion prevention to relieve imminent hazards to life and property created by a natural disaster that causes a sudden impairment of a watershed."  7 C.F.R. § 624.2.  Project sponsors include "a State government or a State agency or a legal subdivision thereof, [or] local unit of government . . . with a legal interest in or responsibility for the values threatened by a watershed emergency."  *Id.* § 624.4(g).  To provide assistance, the EWP Program instructs that "NRCS will enter into a Cooperative Agreement with a sponsor that specifies the responsibilities of the sponsor . . . , including any required operation and maintenance responsibilities."  *Id.* § 624.8(c).

Louisiana. For the 16 watershed areas, the estimated cost of the work was $4,318,509.05.

The Cooperative Agreement stated that St. Bernard would arrange for a contractor to perform the work, pay the contractor, provide technical services, be responsible for all administrative expenses, and take responsibility for and necessary action to deal with any and all contractual and administrative issues. The NRCS agreed to "provide 100 percent ($4,318,509.05) of the *actual* costs of the emergency watershed protection measures," and to "[m]ake payment to the [Parish] covering NRCS's share of the cost, upon receipt and approval [of St. Bernard's formal request for reimbursement] with supporting documentation."

In March 2010, St. Bernard entered into a contract with Omni Pinnacle, LLC ("Omni") in which Omni agreed to remove the sediment in Bayou Terre Aux Boeufs for $4,290,300.00. St. Bernard contracted with All South Consulting Engineers ("All South") to manage and inspect the Bayou Terre Aux Boeufs project.

The price of the contract was predicated on the removal of an estimated 119,580 cubic yards of sediment. After Omni completed its pre-construction survey, it revised the estimated amount of sediment to be removed downward by approximately 59 percent.

In September 2010, Omni completed the Bayou Terre Aux Boeufs project. Despite having removed only 49,888.69 cubic yards of sediment, Omni submitted an invoice to St. Bernard for $4,642,580.58. In light of the 59 percent decrease in the amount of sediment to be removed, the NRCS determined that it would reimburse St. Bernard only in the amount of $2,849,305.60.

All South reviewed Omni's invoice and, after noting certain concerns and price markups, recommended that St. Bernard pay Omni $1,758,548.94. On July 13, 2011, St. Bernard paid that amount to Omni, and the NRCS

reimbursed St. Bernard in full for that payment, after an adjustment for an unrelated debt owed by St. Bernard to the Environmental Protection Agency.

St. Bernard and Omni continued to dispute the amount remaining to be paid to Omni. Then, on January 17, 2014, Omni and St. Bernard executed a change order that adjusted the contract price from \$4,642,580.58 to \$3,243,996.37. St. Bernard paid Omni \$1,463,447.43, which equaled the remaining contractual amount due minus liquidated damages owed by Omni because of project delays.

St. Bernard then sought reimbursement from the NRCS for that amount. The NRCS responded by requesting additional information regarding the invoiced work. St. Bernard provided some of the requested information in a letter dated August 26, 2014. Subsequently, on September 29, 2014, the NRCS reimbursed St. Bernard in the amount of \$1,107,581.22, which was \$355,866.21 less than St. Bernard claims it is due.[2] In a letter dated February 23, 2015, the NRCS explained that it had withheld the remainder of the requested funds because it had not received "the actual documentation that went into the calculation to determine the adjusted cubic yard rate." The letter stated, "We are simply requesting clear, specific, organized documentation of the actual documents that All South relied on in order to determine the rates to be charged and a specific accounting of the figures used to determine the amount due and owing." The letter concluded, "Until such time as the NRCS receives the supporting documentation relied on by

---

[2]    In its complaint, St. Bernard asserted that the total amount owed to it by the government was \$681,974.73. In its brief, however, St. Bernard claims to be owed only \$355,826.21, as it represents that it does not contest the validity of the deduction that accounts for the difference in the two amounts. Appellant's Br. 3 n.1, 4.

All South in their cubic yard rate calculations . . . the NRCS cannot address the acceptability of the increased rates to substantiate payment of more than what has already been reimbursed."

St. Bernard took the position that it had "submitted sufficient back-up and supporting documentation to be reimbursed the full amount it requested," Complaint ¶ 34, and on June 19, 2015, St. Bernard filed this action in the Court of Federal Claims to recover the remaining sum from the government.

Invoking the Court of Federal Claims' jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), St. Bernard alleged that the government had breached the Cooperative Agreement by not reimbursing it for all the funds it had paid in connection with the Bayou Terre Aux Boeufs project. The government filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the Cooperative Agreement was not a contract, but rather a "Cooperative Agreement" that did not create an enforceable obligation on the part of the federal government.

The Court of Federal Claims granted the government's motion to dismiss for two reasons. First, the court found that an implied right to damages does not arise from a cooperative agreement such as the one in this case. *St. Bernard Par. Gov't v. United States*, 134 Fed. Cl. 730, 734–36 (2017). Second, the court found that the Cooperative Agreement between St. Bernard and the NRCS was not an enforceable contract, because the government received no consideration in the form of a direct benefit to the United States. *Id.* at 735–76.

II

On appeal to this court, St. Bernard argues that the trial court erroneously concluded that the agreement between St. Bernard and the NRCS was not a binding contract enforceable in money damages against the United

States in the Court of Federal Claims.  We do not reach that issue, because we conclude that Congress has barred claims such as St. Bernard's from being adjudicated in the Court of Federal Claims, and instead has provided for such claims to be addressed first in administrative review proceedings before the Department of Agriculture, followed by judicial review in a federal district court.

A

In the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, Pub. L. 103-354, Congress created a detailed and comprehensive statutory scheme providing private parties with the right of administrative review of adverse decisions made by particular agencies within the Department of Agriculture.  *See* 7 U.S.C. §§ 6991–99.  The specified agencies included the NRCS.  7 U.S.C. § 6991(2)(F).

The 1994 statute established the National Appeals Division ("NAD") in the Department of Agriculture to conduct formal administrative appeals in the case of disputes covered by the statute.  7 U.S.C. §§ 6991-7002.[3]  The statute provided for formal appeals as well as informal hearings. *See id.* §§ 6994–96.  The statute set out, in some detail, the procedures to be followed in appeals before the NAD, including the right to a hearing before a  hearing officer, *id.* § 6997, and the right to review of any decision of a hearing officer by the Director of the Division, *id.* § 6998.

Importantly, the 1994 statute contains a provision requiring aggrieved parties to exhaust their administrative

---

[3]    Confusingly, the predecessor of the National Appeals Division was also known as the National Appeals Division, but the statutory provisions governing its operations were importantly different from those adopted in 1994. *See Deaf Smith County Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1212–13 (D.C. Cir. 1998).

remedies prior to obtaining judicial review. That provision, which is entitled "Exhaustion of administrative appeals," states:

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against—

(1) the Secretary;

(2) the Department; or

(3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e).

Finally, in section 6999, the statute granted a right to judicial review of the agency's final administrative decision. That provision states:

A final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5 [the Administrative Procedure Act].

7 U.S.C. § 6999.

Following the enactment of the 1994 statute, the Department of Agriculture promulgated regulations implementing the administrative review procedures. Tracking the statute, the regulations are specifically made applicable to the NRCS, *see* 7 C.F.R. §§ 11.1(4), 614.3(a)(2)(ii), and they set out the procedures to be followed in both formal and informal hearings. *Id.* §§ 11.3–11.12; 614.4–614.16. The regulations further provide for judicial review in a district court, conditioned on the exhaustion of administrative remedies within the Department. *See id.* § 11.13 ("A final determination of the [NAD] shall be reviewable and

enforceable by any United States District Court of competent jurisdiction in accordance with [the APA]," and "[a]n appellant may not seek judicial review of any agency adverse decision appealable under this part without receiving a final determination from the [NAD] pursuant to the procedures of this part."); *see also id.* § 614.17 ("A participant must receive a final determination from NAD pursuant to 7 CFR part 11 prior to seeking judicial review in any U.S. District Court of competent jurisdiction.").

B

The parties did not refer to the 1994 statute or the regulations, either in the trial court or on appeal. Nor did they advert to the question whether, for claims such as the one in this case, Congress has displaced the Tucker Act remedy in the Court of Federal Claims in favor of administrative review before the agency followed by judicial review in an appropriate United States district court. We raised the issue *sua sponte* after argument and requested supplemental briefing on that issue from the parties.

In the supplemental briefing, the government argued that this action should be dismissed because of St. Bernard's failure to exhaust its administrative remedies. In its brief, St. Bernard did not dispute that the statutory provisions requiring exhaustion of administrative remedies and directing judicial review to be conducted in a district court are normally applicable to cases such as this one. Instead, St. Bernard argued that the exhaustion of administrative remedies was not required in this case for three reasons: (1) because the government waived the exhaustion issue by not raising it before the Court of Federal Claims; (2) because the NRCS never issued an adverse decision from which an administrative appeal would lie; and (3) because the NRCS failed to comply with the statutory requirement in 7 U.S.C. § 6994 to give St. Bernard notice of its rights to administrative review within 10 days of an adverse decision.

III

A

Although the question whether the Court of Federal Claims' Tucker Act jurisdiction has been displaced was not previously raised either in the trial court or before us, that is not an impediment to our reaching the issue now, because the issue is one of subject-matter jurisdiction.

It is well settled that limitations on subject-matter jurisdiction are not waivable; the court must address jurisdictional issues, even *sua sponte*, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case. *See Foster v. Chatman*, 136 S. Ct. 1737, 1745 (2016) ("Neither party contests our jurisdiction to review [the plaintiff's] claims, but we 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006))); *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed. Cir. 2008); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993).

St. Bernard focuses on the exhaustion issue governed by section 6912(e) of the 1994 statute and does not address the exclusive reviewing jurisdiction of district courts provided by section 6999. Exhaustion requirements are sometimes regarded as jurisdictional and sometimes not. Judicially created exhaustion requirements are not jurisdictional, *see Sims v. Apfel*, 530 U.S. 103, 106 n.1 (2000),

while statutory exhaustion requirements can be, at least where Congress "states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." *EEOC v. Lutheran Social Servs.,* 186 F.3d 959, 962 (D.C. Cir. 1999) (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984)); *see Weinberger v. Salfi*, 422 U.S. 749, 757 (1975). The issue is purely one of statutory interpretation. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000).

There is a conflict among the circuits as to whether the exhaustion requirement of 7 U.S.C. § 6912(e) is not only mandatory, but jurisdictional. The Second Circuit has held that it is, *see Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94–95 (2d Cir. 1998), while several other circuits have held that it is not, *see Munsell v. Dep't of Agric.*, 509 F.3d 572, 581 (D.C. Cir. 2007); *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 603–06 (5th Cir. 2007); *Ace Property & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 999–1000 (8th Cir. 2006); *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002); *see also Forest Guardians v. U.S. Forest Serv.*, 641 F.3d 423, 432 (10th Cir. 2011) (declining to decide whether the exhaustion requirement is jurisdictional, but finding that it is mandatory).

We need not resolve that issue, however, because in each of the above-cited cases the venue for judicial review was not in question: with or without exhaustion, judicial review would be conducted in a district court. In this case, however, the exhaustion issue would directly affect the venue for review. That is, in the other circuit cases, judicial review would take place in a district court regardless of whether exhaustion was required. The only question in those cases was whether there were any cognizable excuses for the plaintiff's failure to exhaust administrative remedies on the way to the district court. Here, however, if we accept St. Bernard's argument, the consequence of allowing

the plaintiff to bypass the statutory administrative review requirement would be to change the court in which review would take place, and to do so at the plaintiff's option.

We interpret the 1994 statute as expressing Congress's intention to require administrative exhaustion followed by judicial review in a district court. Even if the statute is not interpreted as treating exhaustion as a jurisdictional requirement, and thus to allow parties to bypass the administrative review process in some instances, we interpret section 6999 as requiring that any judicial review of the agency's adverse decisions be conducted in a district court. There is certainly no indication in the statutory scheme, or any analogous statutory scheme, that judicial review would be conducted in district court when administrative remedies are exhausted, but in the Court of Federal Claims when they are not.

There is a substantial body of law dealing with the relationship between the Tucker Act and statutes in which Congress has created an administrative remedy followed by judicial review in a district court. In such settings, Congress's creation of a system of administrative review, followed by judicial review in a district court (or in a court of appeals) has been held to displace any Tucker Act remedy that may otherwise have been available in the Court of Federal Claims.

The Supreme Court has so held on numerous occasions. *See, e.g., Horne v. Dep't of Agric.*, 569 U.S. 513 (2013) (Agricultural Marketing Agreement Act provided a comprehensive remedial scheme that withdrew Tucker Act jurisdiction of the Court of Federal Claims over farmers' takings claims); *United States v. Bormes*, 568 U.S. 6 (2012) (self-executing remedial scheme of the Fair Credit Reporting Act displaced Tucker Act jurisdiction); *Hinck v. United States*, 550 U.S. 501 (2007) (section 6404(h) of the Internal Revenue Code "set out a carefully circumscribed, time-limited, plaintiff-specific provision, which also precisely

defined the appropriate forum" and displaced the Tucker Act remedy in the Court of Federal Claims); *United States v. Fausto*, 484 U.S. 439 (1988) (remedial scheme of the Civil Service Reform Act displaced the Court of Federal Claims' jurisdiction under the Tucker Act).

This court has done so as well. *See, e.g.*, *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1093 (Fed. Cir. 2018) (Tucker Act jurisdiction over contract claims "displaced by the comprehensive scheme for review provided in the Communications Act of 1934"); *Marcum LLP v. United States*, 753 F.3d 1380, 1383 (Fed. Cir. 2014) (remedial scheme of the Criminal Justice Act "preempts Tucker Act jurisdiction over Marcum's claim"); *Pines Residential Treatment Ctr., Inc. v. United States*, 444 F.3d 1379, 1380–81 (Fed. Cir. 2006) (hospital's claim for Medicare reimbursement must be resolved through the comprehensive administrative and judicial review scheme of the Medicare Act; Tucker Act jurisdiction is preempted); *Tex. Peanut Farmers v. United States*, 409 F.3d 1370 (Fed. Cir. 2005) (remedial provisions of the Federal Crop Insurance Act placed exclusive reviewing jurisdiction in federal district courts); *Folden v. United States*, 379 F.3d at 1356–58 (D.C. Circuit has exclusive jurisdiction to review certain FCC orders); *Pueschel v. United States*, 297 F.3d 1371, 1374–78 (Fed. Cir. 2002) (Federal Employees' Compensation Act and Civil Service Reform Act preempted Tucker Act jurisdiction over employee's back pay claim); *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (Controlled Substances Act provides for "a comprehensive administrative and judicial system to review the *in rem* administrative forfeiture of property seized pursuant to 21 U.S.C. § 881. When such a 'specific and comprehensive scheme for administrative and judicial review' is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." (quoting *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 549–50 (Fed. Cir. 1994))).

Addressing the precise statutory scheme at issue here, the Court of Federal Claims has held that the 1994 statute deprived that court of jurisdiction over disputes that were subject to the exhaustion requirement of section 6912(e) and the exclusive district court review provided in section 6999. In *Austin v. United States*, 118 Fed. Cl. 776, 795 (2014), the court stated that the 1994 statute and its implementing regulations "are clear that a program 'participant' must exhaust USDA administrative remedies, by seeking an agency decision and, if disappointed, has the option to file an appeal at the NAD. If the program participant is still dissatisfied, the participant may then appeal to the appropriate United States District Court." Likewise, in *Doe v. United States*, 106 Fed. Cl. 118, 122, 126 (2012), the court dismissed a claim for damages based on an NRCS program for failure to exhaust administrative remedies. The court wrote: "Congress has mandated that all administrative appeal procedures established by the Secretary of Agriculture must be exhausted before a suit may be filed against the USDA or any of its individual agencies. . . . The district courts have jurisdiction over appeals of NAD decisions." *Id.*[4]

In a number of other decisions, the Court of Federal Claims has taken the position that it lacks jurisdiction over either an appeal from a denial of relief by the National

---

[4]    St. Bernard characterizes the *Doe* case as one in which the court refused to apply the exhaustion requirement. But as the opinion in *Doe* makes clear, the portion of the claim that the court held not to be subject to the exhaustion requirement involved "matters of general applicability," which the applicable regulations expressly state are not subject to administrative review. As to the individual claim for reimbursement from the NCRS, the court held the exhaustion requirement applicable and dismissed that claim as jurisdictionally barred. 106 Fed. Cl. at 123–24.

Appeals Division, *see Madison v. United States*, 98 Fed. Cl. 393, 395 (2011), or from an action that was subject to the exhaustion requirement but in which the claimant did not invoke the available administrative remedies, *see Allied Home Mortg. Capital Corp. v. United States*, 95 Fed. Cl. 769, 784 (2010); *Bruhn v. United States*, 74 Fed. Cl. 749, 754–55 (2006) (Section 6999 "provides the district court with jurisdiction over *all* final determinations of the NAD," and excludes Tucker Act jurisdiction over a claim that does not fall "outside the administrative and judicial avenues available in the district courts and the agency appeal process mandated by" section 6999.); *Farmers & Merchs. Bank v. United States*, 43 Fed. Cl. 38, 43–44 (1999) ("Farmers next argues that, even if the appeals process is mandatory, the United States Court of Federal Claims may still exercise jurisdiction over its claim, since the relief sought in this court is for money damages. In essence, Farmers argues that because its present complaint . . . is a complaint for money damages, rather than a complaint seeking the reversal of the NAD determination, the complaint is not subject to the exclusive district court jurisdiction of 7 U.S.C. § 6999. The text and legislative history of the 1994 Reorganization Act demonstrate, however, that the district courts are intended as the exclusive recourse for a plaintiff dissatisfied with the outcome of the relevant mandatory appeals process.").

This case fits squarely within the rationale of those decisions. The administrative review procedures, followed by judicial review in a district court, offer the opportunity for full relief on a claim such as St. Bernard's. As the same time, the administrative process has the advantage of permitting administrative development of a record on matters such as what information the NRCS sought from St. Bernard as a condition for the payment of the remaining amount sought by St. Bernard, and whether the NRCS's request for additional documentation was consistent with the agency's legitimate needs and with Department policy.

St. Bernard has pointed to no reason that the requirement of administrative exhaustion, followed by judicial review in a district court, should not apply in this instance. Although the Tucker Act action in this case was brought against the United States, not the Secretary of Agriculture, the Department of Agriculture, or an agency, office, officer, or employee of the Department of Agriculture, as provided by section 6912(e), that distinction is merely formalistic and does not affect the applicability of the exhaustion requirement or the reviewing authority of the district court. It is well settled that we look "to the true nature of the action in determining the existence or not of jurisdiction." *Tex. Peanut Farmers*, 409 F.3d at 1372 (quoting *Nat'l Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997)). In this case, it is clear that the action was seeking relief for actions by an agency of the Department of Agriculture, the NRCS.

It is no impediment to the applicability of sections 6912(e) and 6999 that the dispute in this case is over money. Neither those statutes nor the implementing Department of Agriculture regulations contain any provision excluding monetary disputes from their reach. The programmatic activities of the NRCS, like those of other agencies within the Department of Agriculture, frequently entail dispensing funds, so disputes over funding arrangements are frequently the subject matter of administrative proceedings before the Department.

Nor is this a "pure" contract case, such as a dispute over a settlement agreement as in *Alvarado Hospital, LLC v. Price*, 868 F.3d 983 (Fed. Cir. 2017). Unlike in that case, where the settlement agreement was entirely separate from the programmatic dispute from which it arose, the payments made by the NRCS under the EWP program, and any disputes arising regarding those payments, are intrinsic to the programs administered by the NRCS and thus particularly suitable for administrative adjudication in the first instance.

B

In its supplemental brief, St. Bernard argues that it "had no administrative appeal rights and . . . cannot be found to have failed to exhaust administrative/appeal remedies" because the NRCS did not issue a final determination as to St. Bernard's claim, as required by 7 U.S.C. § 6994. *See* Appellant Supp. Br. at 4–5. That argument, however, is contrary to the definition of "adverse decision" under 7 U.S.C. § 6991 and the rules and procedures governing NAD appeals. Section 6991 states that an "adverse decision" includes "the failure of an agency to issue a decision or otherwise act on the request or right of the participant." Additionally, the preamble to the NAD rules of procedure states that "if an administrative decision adversely affects a participant, it is an adverse decision subject to appeal under the statute regardless of whether the agency has sent out the formal letter with formal appeal rights." 64 Fed. Reg. 33367, 33371 (June 23, 1999) (explaining that the "USDA interprets the [NAD] statute to provide a clear intent on the part of Congress to afford participants the right to appeal de facto decisions rendered by an agency's failure to act. . . . To require a written decision from the agency before a participant may appeal essentially stops a participant's ability to appeal agency inaction, contrary to Congressional intent."); *see McBride Cotton & Cattle Corp. v. Glickman*, No. 99-0824-PHX-ROS, 2000 WL 34227966, at *13 (D. Ariz. Sept. 25, 2000). That language rebuts St. Bernard's argument that no appeal right was available because of the NRCS's failure to issue a final decision on St. Bernard's claim.

C

In the alternative, St. Bernard argues that if the NRCS's action constituted an adverse decision, St. Bernard was entitled by statute to notice of its right to administrative remedies. *See* 7 U.S.C. § 6994. Because it was not given that notice, St. Bernard argues that it was not

required to exhaust its administrative remedies and to seek judicial relief in a district court, but was free to file suit against the United States in the Court of Federal Claims.

There are two problems with St. Bernard's argument on that issue. First, we think the best characterization of the NRCS's February 23, 2015, letter to St. Bernard, is that the agency was not issuing a final rejection of St. Bernard's reimbursement request, but was simply advising St. Bernard of what further documentation was needed before the agency would issue the reimbursement. In that respect, the agency's letter did not constitute a final adverse decision, and a notice of the right to an administrative appeal was not required.

Second, even if the agency's letter were regarded as a final adverse decision, and the agency failed to comply with its statutory obligation to give notice to St. Bernard of its right to seek administrative review, the remedy would not be to allow St. Bernard to seek judicial relief from a court other than the court Congress designated to resolve disputes such as this one. Instead, even if St. Bernard is correct that the exhaustion requirement is non-jurisdictional and there was an adverse decision for which a notice of the right to administrative review should have been given, the remedy would be to treat the delay in instituting administrative review as excused. *See, e.g., Toyama v. Merit Sys. Prot. Bd.*, 481 F.3d 1361, 1366–67 (Fed. Cir. 2007) ("Failure to provide correct notice of appeal rights constitutes good cause for a late filing."); *Shiflett v. U.S. Postal Serv.*, 839 F.2d 669, 674 (Fed. Cir. 1988) (same). That would allow St. Bernard to follow the congressionally dictated path of exhausting its administrative remedies and ultimately obtaining judicial review from a district court. What it would not permit is for St. Bernard to ignore the judicial review provision of the 1994 statute altogether in favor of a Tucker Act suit in the Court of Federal Claims.

Because Congress has determined that judicial review of disputes such as the one in this case is to be conducted in a district court following the exhaustion of administrative remedies within the Department of Agriculture, it is clear that Congress intended for any Tucker Act remedy to be displaced.

For the reasons set forth above, we hold that Congress displaced Tucker Act jurisdiction over claims against the NRCS such as St. Bernard's and imposed in its place a regime requiring exhaustion of administrative remedies, followed by judicial review in a district court. We therefore hold that the Court of Federal Claims lacked subject-matter jurisdiction over this case. Although the rationale for our decision differs from that employed by the trial court, we reach the same ultimate conclusion—that the Court of Federal Claims lacked subject-matter jurisdiction over this case—and we therefore affirm the trial court's judgment.[5]

Each party shall bear its own costs for this appeal.

### AFFIRMED

---

[5]    Although the Court of Federal Claims characterized its dismissal as jurisdictional in nature, the correct characterization of the court's decision that the Cooperative Agreement was not a contract enforceable in damages against the government would be a dismissal for failure to state a claim on which relief can be granted. *See Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1307–09 (Fed. Cir. 2008); *Brodowy v. United States*, 482 F.3d 1370, 1375–76 (Fed. Cir. 2007); *Doe v. United States*, 463 F.3d 1314, 1325 (Fed. Cir. 2006); *Lewis v United States*, 70 F.3d 597, 603 (Fed. Cir. 1995). Because we conclude that the Court of Federal Claims lacked jurisdiction in this case, it would be inappropriate for us to reach the merits-based issue of whether the complaint should be dismissed for failure to state a claim.