**MARCUM LLP, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 13–189C**

United States Court of Federal Claims.

Filed: August 2, 2013

Joseph A. DiRuzzo, III, Fuerst Ittleman David & Joseph, PL, Miami, Florida, for plaintiff. With him were Andrew S. Ittleman and Mitchell Fuerst, Fuerst Ittleman David & Joseph, PL, Miami, Florida.

James R. Sweet, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were Reginald T. Blades, Jr., Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Stuart F. Delery, Acting Assistant Attorney General, Civil Division.

**Motion to Dismiss; Lack of Subject Matter Jurisdiction; Criminal Justice Act, 18 U.S.C. § 3006A; Fifth Amendment Takings Claim.**

## OPINION

HORN, J.

Plaintiff, Marcum LLP, is a professional services firm with offices in New York, New Jersey, Connecticut, Pennsylvania, Florida, Massachusetts, California, Grand Cayman, and China. Among the services plaintiff offers, plaintiff provides forensic accounting and litigation support services, including expert witness services, for both civil and criminal trials. Plaintiff filed its original complaint in the United States Court of Federal Claims on March 13, 2013, and an amended complaint on May 30, 2013, alleging that the Chief Judge of the United States Court of Appeals for the Fifth Circuit, Edith H. Jones, caused an uncompensated taking of plaintiff's property in violation of the Fifth Amendment to the United States Constitution when she issued a Service Provider Con-

tinuity and Payment Order (Continuity and Payment Order), coupled with a notice of a contempt hearing, resulting in "an enforced requisitioning of Marcum's business for the duration of Mr. Stanford's criminal trial."[1] Plaintiff claims a property interest in what it describes generally as "professional services" and " 'business assets' [that] include, but are not limited to, contract rights, the right to exclusive use of its property, and the right to dispose of its property."

Plaintiff's claim arises out of services it rendered to assist in the criminal defense of Mr. Stanford, who was indicted by the United States in the United States District Court for the Southern District of Texas on June 18, 2009. In the indictment, the government alleged that Mr. Stanford had defrauded investors through a multi-billion dollar "Ponzi"-type scheme. Plaintiff states that on June 19, 2009, the government made public its indictment of Mr. Stanford and arrested him. According to plaintiff's amended complaint, on the same day, the Securities and Exchange Commission instituted fraud proceedings against Mr. Stanford and his company, the Stanford Financial Group, and the government "seized 33 offices of the Stanford Financial Group" along with Mr. Stanford's personal assets.

Plaintiff alleges that Judge David Hittner of the United States District Court for the Southern District of Texas, who presided over Mr. Stanford's trial court, criminal proceedings, declared Mr. Stanford indigent on October 27, 2010, after finding that the government's seizure of Mr. Stanford's assets left him without sufficient financial resources to retain defense counsel. Pursuant to the Criminal Justice Act (CJA), Judge Hittner appointed defense counsel to Mr. Stanford. *See* 18 U.S.C. § 3006A (Supp. IV 2010). Plaintiff asserts that, in June 2011, because the government's case against Mr. Stanford was broad in scope and implicated highly technical financial transactions, Mr. Stan-

ford's appointed defense attorneys sought assistance from plaintiff in preparation for trial, including forensic accounting and expert witness services. Plaintiff was appointed to assist in Mr. Stanford's defense under a provision of the CJA that provides for "[s]ervices other than counsel." *See* 18 U.S.C. § 3006A(e)(1). The applicable provision states:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

*Id.*

Plaintiff's compensation was governed by the following provision of the CJA, which also addresses the process for the approval of requests for compensation that exceed the statutory maximum:

> Compensation to be paid to a person for services rendered by him to a person under this subsection, or to be paid to an organization for services rendered by an employee thereof, shall not exceed $2,400, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court, or by the United States magistrate judge if the services were rendered in connection with a case disposed of entirely before him, as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit. The chief judge of the circuit

---

1. Both plaintiff and defendant refer to Mr. Stanford as "Allan R. Stanford" throughout their filings in this court. A petition for a writ of mandamus filed by plaintiff in the United States Supreme Court, which was attached to one of defendant's filings in this court, however, indicates that plaintiff provided services in relation to the defense of Robert Allen Stanford, using a different middle name spelling. The government's June 18, 2009 indictment also identifies the individual as Robert Allen Stanford. *See* Indictment, *United States v. Stanford*, No. H-09-342 (S.D. Tex. June 18, 2009).

may delegate such approval authority to an active or senior circuit judge.

18 U.S.C. § 3006A(e)(3).

Plaintiff maintains that, pursuant to the CJA provisions quoted above, it was required to obtain court certification as the cost of the services it rendered for Mr. Stanford's defense substantially would exceed $2,400.00. Before beginning its work, plaintiff asserts that it submitted to presiding District Court Judge Hittner a preliminary budget which estimated the projected cost of its services at approximately $4.5 million. Plaintiff alleges that Judge Hittner approved plaintiff's preliminary budget and authorized plaintiff to commence its work.[2] Plaintiff's amended complaint does not allege, however, that the Chief Judge of the Circuit or her delegee approved plaintiff's preliminary budget or the revised budget that plaintiff alleges to have subsequently submitted.

Plaintiff states that, in accordance with the Southern District of Texas' CJA plan, it submitted monthly vouchers for services rendered in June, July, and August 2011 to the District Court for the Southern District of Texas. In September 2011, plaintiff claims that it became aware that Judge Hittner had certified its June, July, and August 2011 vouchers and submitted them for approval to the United States Court of Appeals for the Fifth Circuit. Plaintiff further states that it was paid pursuant to its June, July, and August 2011 vouchers in October 2011. In addition, plaintiff alleges that, in September 2011, it submitted a revised budget at the request of defense counsel and the District Court. Plaintiff's revised budget reduced its estimated costs to $3.2 million, based on its anticipated expenses of $428,250.00 per month for September, October, November, and December 2011.

Plaintiff also alleges that it submitted monthly vouchers to Judge Hittner, totaling $845,588.48, for services rendered in September, October, and November 2011. Before Judge Hittner certified either of plaintiff's September or October 2011 vouchers, plaintiff alleges that, at the request of the Court of Appeals for the Fifth Circuit, Judge Hittner appointed attorney Marlo P. Cadeddu to act as a discovery expert and to review plaintiff's budget and expenses. Plaintiff states that, in a memorandum to the Chief Judge of the Court of Appeals for the Fifth Circuit, dated December 20, 2011, which plaintiff characterizes as "highly favorable," Ms. Cadeddu recommended that Mr. Stanford's defense experts continue to receive funding, given the highly technical nature of Mr. Stanford's case. According to plaintiff's amended complaint, Judge Hittner certified plaintiff's vouchers for September and October 2011, but took no action on its November 2011 voucher.

Plaintiff alleges in its amended complaint that, as of December 30, 2011, Marcum was still working, but had not been paid for any of the work it performed in September, October, November, and December of 2011, despite a favorable review regarding plaintiff's work as essential to Mr. Stanford's defense. Plaintiff alleges it then "was owed approximately $700,000." Plaintiff states that the lack of payment for its services led it to tender a letter of resignation to Mr. Stanford's defense counsel on December 30, 2011. According to plaintiff's amended complaint, on the same day, Mr. Stanford's defense attorneys filed plaintiff's letter of resignation under seal with the District Court, as an attachment to an agreed motion to continue Mr. Stanford's fast approaching January 23, 2012 trial date.

According to plaintiff, on January 4, 2012, the Chief Judge of the United States Court of Appeals for the Fifth Circuit entered a Continuity and Payment Order, which directed plaintiff to continue work on Mr. Stanford's defense through the conclusion of the case in the District Court, as the impending trial date, at that point less than three weeks away, would have made finding a replace-

---

**2.** Guidelines for the administration of the CJA set forth in the Guide to Judiciary Policy provide that, "[i]f it can be anticipated that the compensation will exceed the statutory maximum, advance approval should be obtained from the court and the chief judge of the circuit (or the active or senior circuit judge to whom excess compensation approval authority has been delegated)." *Guidelines for the Administration of the CJA and Related Statutes,* 7A Guide to Judiciary Policy Ch. 3, § 310.20.20(b).

ment "neither feasible nor economical." In addition to requiring plaintiff to continue assisting with Mr. Stanford's defense, in the same Continuity and Payment Order, Chief Judge Jones approved payment of $205,000.00 on plaintiff's September, October, and November 2011 vouchers, pending Judge Hittner's certification of plaintiff's November 2011 voucher. Plaintiff also maintains that, on January 6, 2012, it was advised that Chief Judge Jones had noticed Marcum for a contempt hearing scheduled for January 9, 2012.

In response to Chief Judge Jones' Continuity and Payment Order, plaintiff alleges it retained its own counsel, who filed numerous motions on Marcum's behalf. On January 7, 2012, plaintiff filed an *ex parte* emergency motion with Chief Judge Jones asking her to reconsider the Continuity and Payment Order, which plaintiff alleges was denied. Plaintiff also filed a petition for a writ of mandamus at the United States Supreme Court on January 18, 2012, which was denied on February 21, 2012, and an emergency application for stay pending the disposition of the petition for a writ of mandamus by the United States Supreme Court on January 19, 2012, which was denied on January 20, 2012. Plaintiff's counsel then, on January 25, 2012, appears to have filed an *ex parte* emergency motion for stay with Chief Judge Jones, which was also apparently denied. In addition, likewise on January 25, 2012, plaintiff's counsel filed a notice of appeal in the United States District Court for the Southern District of Texas, which was dismissed for lack of jurisdiction by the United States Court of Appeals for the Fifth Circuit on February 8, 2012. Finally, on January 27, 2012, plaintiff's counsel filed an emergency motion for stay, or in the alternative, a petition for writ of mandamus in the United States Court of Appeals for the Fifth Circuit, which was dismissed for lack of jurisdiction on February 9, 2012. *See In re Marcum L.L.P.*, 670 F.3d 636 (5th Cir.2012). Plaintiff claims that, as a result, it was confronted with "the Hobson's choice of resigning and being held in contempt of court on the one hand, and continuing to work and incurring devastating financial losses on the other." Plaintiff opted to continue providing services through the end of Mr. Stanford's trial.

On May 15, 2013, defendant moved to dismiss plaintiff's original complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) (2012). Defendant argued in its initial motion to dismiss plaintiff's original complaint that plaintiff had failed to allege its continued compliance with applicable procedures for seeking compensation for services it rendered after November 2011. On May 30, 2013, plaintiff amended its complaint in this court to include an allegation that it had continued to submit payment vouchers following Chief Judge Jones' entry of the Continuity and Payment Order. Plaintiff claims that it submitted three further vouchers in January and March 2012 for services it rendered between December 2011 and March 2012. Plaintiff also asserts that it submitted a voucher for final payment on June 22, 2012, which "indicated that no work was performed between March 9, 2012 and June 22, 2012." Plaintiff alleges that, "[i]n sum, Marcum was left with $1,204,422.18 in unpaid fees."

On June 17, 2013, defendant filed a revised motion to dismiss plaintiff's amended complaint alleging only lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), because entertaining plaintiff's alleged takings claim would require this court to review the actions of the United States District Court for the Southern District of Texas and the United States Court of Appeals for the Fifth Circuit. Defendant asserts that this court cannot examine Chief Judge Jones' entry of the Continuity and Payment Order, regardless of whether it is classified as a judicial or administrative action, because doing so would require the Court of Federal Claims to "second-guess the decision or action of another . . . court." Defendant asserts that the appropriate course of action for plaintiff was to utilize "the appellate process available to review that decision," rather than to collaterally attack the decision of the Chief Judge of the United States Court of Appeals for the Fifth Circuit by filing an alleged takings claim in the Court of Federal Claims. Defendant also argues that this court lacks jurisdiction over plaintiff's amended complaint

because the CJA includes its own comprehensive scheme of administrative and judicial review over compensation decisions, which does not include the United States Court of Federal Claims.

Plaintiff responds that it is not appealing Chief Judge Jones' Continuity and Payment Order, but that it is presenting a takings claim, over which this court has jurisdiction. Plaintiff states that "[w]ho the actor was or which agency of the federal government created the taking does not govern this analysis." Plaintiff contends that pursuing a writ of mandamus is "not [a] substitute for the filing of a takings claim in this Court," and that this court is the only appropriate court in which it can challenge Chief Judge Jones' Continuity and Payment Order as a taking. Finally, plaintiff argues that the CJA does not contain a comprehensive scheme for judicial review of compensation decisions because the Act's only "minimal" provision for review of the District Judge's fee determinations is by the Chief Judge of the Circuit with regard to certification of excess fees. According to plaintiff, this is "*not* an appeal and does not allow an aggrieved party to challenge a district court's denial of excess fees." (emphasis in original). Plaintiff argues that filing a motion for reconsideration with the Chief Judge of the Circuit and a petition for a writ of mandamus with the Supreme Court, the available remedies defendant cites, and which plaintiff has already pursued, "have been written into the CJA by courts over time" and are "not designed to raise the issues brought in a takings case filed with the Claims [sic] Court."

## DISCUSSION

■ It is well established that " 'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' " *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the

parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, —— U.S. ——, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing *Arbaugh v. Y & H Corp.*, 546 U.S. at 514, 126 S.Ct. 1235)); *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1342 (Fed.Cir.2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.*, 918 F.2d 160, 161 (Fed.Cir.1990))); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. at 506, 126 S.Ct. 1235; *see also Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed.Cir.2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing *Arbaugh v. Y & H Corp.*, 546 U.S. at 506, 126 S.Ct. 1235; *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2004), *cert. denied*, 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); and *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998))); *Pikulin v. United States*, 97 Fed.Cl. 71, 76, *appeal dismissed*, 425 Fed. Appx. 902 (Fed.Cir.2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where ... neither party has raised this issue." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1369 (Fed.Cir.) (citing *Textile Prods., Inc., v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (Fed.Cir.1998)), *reh'g and reh'g en banc denied* (Fed.Cir. 2004), *cert. granted in part*, 546 U.S. 975, 126 S.Ct. 543, 163 L.Ed.2d 458 (2005), *and cert. dismissed as improvidently granted*, 548

U.S. 124, 126 S.Ct. 2921, 165 L.Ed.2d 399 (2006).

■ Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2012); Fed.R.Civ.P. 8(a)(1), (2) (2013); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir.1997); *see also Klamath Tribe Claims Comm. v. United States*, 97 Fed.Cl. 203, 208 (2011); *Gonzalez–McCaulley Inv. Grp., Inc. v. United States*, 93 Fed.Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir. 1998); *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1363 n. 9 (Fed.Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" *Three S Consulting v. United States*, 104 Fed.Cl. 510, 523 (2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). As stated in *Ashcroft v. Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atl. Corp. v. Twombly*,] 550 U.S. at 555 [127 S.Ct. 1955]. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555–56, 127 S.Ct. 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), *as recognized in Davis v. Scherer*, 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139, *reh'g denied*, 468 U.S. 1226, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir.2006); *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed.Cir.2005); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (Supp. V 2011).

■ As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Navajo Nation*,

556 U.S. 287, 289–90, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009); *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 875 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2007), *cert. denied*, 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir. 1999).

■ "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States...." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Smith v. United States*, 709 F.3d 1114, 1116 (Fed.Cir.), *petition for cert. filed* (U.S. 2013); *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed.Cir.2009); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d at 1343 ("[P]laintiff must ... identify a substantive source of law that creates the right to recovery of money damages against the United States."). In *Ontario Power Generation, Inc. v. United States*, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types.... First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver.... Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." *Eastport S.S.[ Corp. v. United States*, 178 Ct.Cl. 599], 605–06, 372 F.2d 1002,] 1007– 08 [ (1967) ] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting *Clapp v. United States*, 127 Ct.Cl. 505, 117 F.Supp. 576, 580[, *cert. denied*, 348 U.S. 834, 75 S.Ct. 55, 99 L.Ed. 658 (1954) ] )).... Third, the Court of Feder-

al Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Eastport S.S.*, 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Id.*; *see also Testan[ v. United States]*, 424 U.S. [392,] 401–02 [96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ]("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself.... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting *Eastport S.S.*, 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

*Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed.Cir.2004); *see also Twp. of Saddle Brook v. United States*, 104 Fed.Cl. 101, 106 (2012).

■ To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon " 'can fairly be interpreted as mandating compensation by the Federal Government.'" *United States v. Navajo Nation*, 556 U.S. at 290, 129 S.Ct. 1547 (quoting *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe*, 537 U.S. at 472, 123 S.Ct. 1126; *United States v. Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961; *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed.Cir.2008), *cert. denied*, 555 U.S. 1153, 129 S.Ct. 1038, 173 L.Ed.2d 468 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. *See United States v. Navajo Nation*, 556 U.S. at 290, 129 S.Ct. 1547 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[ ] that oper-

ate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.,* statutes or contracts).").   " 'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.' "   *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,* 525 F.3d 1299, 1308 (Fed. Cir.2008) (quoting *Greenlee Cnty., Ariz. v. United States,* 487 F.3d at 876); *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); *Peoples v. United States,* 87 Fed.Cl. 553, 565–66 (2009).

■   Plaintiff alleges that Chief Judge Jones' Continuity and Payment Order, coupled with the threat of contempt sanctions, "constituted the taking of Marcum's property because it amounted to the enforced requisitioning of Marcum's business for the duration of Mr. Stanford's criminal trial."   Plaintiff asserts that it had "numerous property interests, all of which were taken by the United States for public use via the Service Provider Continuity and Payment Order, together with threats of sanctions."   Plaintiff describes these interests "generally ... as its 'business assets' [that] include, but are not limited to, contract rights, the right to exclusive use of its property, and the right to dispose of its property."

Although acknowledging that the United States Court of Federal Claims possesses jurisdiction over takings claims, defendant argues that this case does not present a genuine takings claim because the Court of Federal Claims cannot entertain a claim that "requires the court to 'scrutinize the actions of' another tribunal." (quoting *Vereda, Ltda. v. United States,* 271 F.3d 1367, 1375 (Fed. Cir.2001) (quoting *Allustiarte v. United States,* 256 F.3d 1349, 1352 (Fed.Cir.), *cert. denied,* 534 U.S. 1042, 122 S.Ct. 619, 151 L.Ed.2d 541 (2001))).   Plaintiff responds that "[t]he Government's argument is simple enough on its face, but in reality takes [Chief] Judge Jones's order and Marcum's takings claim entirely out of context," be-cause, as noted above, "[w]ho the actor was or which agency of the federal government created the taking does not govern this analysis."

■   Contrary to plaintiff's position, the United States Court of Appeals for the Federal Circuit has held "that the Court of Federal Claims lack[s] jurisdiction to entertain a takings claim that 'would have to determine whether appellants suffered a categorical taking of their property at the hands of the ... courts.' "   *Innovair Aviation Ltd. v. United States,* 632 F.3d 1336, 1343 (Fed.Cir.) (quoting *Allustiarte v. United States,* 256 F.3d at 1352) (omission in original), *reh'g en banc denied* (Fed.Cir.2011), *cert. denied,* 132 S.Ct. 999, 132 S.Ct. 999, 181 L.Ed.2d 790 (2012); *see also Joshua v. United States,* 17 F.3d 378, 380 (Fed.Cir.1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts.").   In *Innovair,* the court noted that "the Court of Federal Claims 'cannot entertain a taking[s] claim that requires the court to 'scrutinize the actions of' another tribunal.' "   *Innovair Aviation Ltd. v. United States,* 632 F.3d at 1343 (quoting *Vereda, Ltda. v. United States,* 271 F.3d at 1375 (quoting *Allustiarte v. United States,* 256 F.3d at 1352)).

Plaintiff argues that its takings claim is "not an appeal of the [Continuity and Payment] Order," and that plaintiff "is not alleging that the Service Provider Continuity and Payment Order was erroneous, unauthorized or *ultra vires.*"   Although cloaked as a takings claim, to the extent that plaintiff seeks compensation for the reduction of its September, October, and November 2011 vouchers and for "$1,204,422.18 in unpaid fees" allegedly earned pursuant to its CJA assignment in Mr. Stanford's criminal trial, such review would necessarily require this court to scrutinize the propriety of District Court Judge Hittner's and Chief Judge Jones' determinations regarding plaintiff's compensation under the CJA.[3]

---

3.   In the Continuity and Payment Order, which plaintiff identifies as effecting the alleged taking, Chief Judge Jones addressed only plaintiff's Sep-tember, October, and November 2011 vouchers. The Continuity and Payment Order did not address payment of plaintiff's subsequent vouchers

The CJA vests in the presiding District Court Judge in a criminal case exclusive jurisdiction to determine compensation under the CJA, and in the Chief Judge of the relevant Circuit Court of Appeals the authority to approve or deny determinations that exceed the statutory maximum.[4] *See* 18 U.S.C. §§ 3006A(d)(3), (e)(3). A presiding judge's determination of fee awards pursuant to the CJA is a non judicial, non-appealable administrative order. *See Shearin v. United States,* 992 F.2d 1195, 1196 (Fed.Cir.1993). CJA compensation claims are not takings nor breach of contract claims. Rather, they are statutory claims derived under the CJA. *See Shearin v. United States,* 26 Cl.Ct. 678, 679 (1992), *aff'd,* 992 F.2d 1195 (Fed.Cir.1993). According to the *Shearin* court, "[t]he source of any right the plaintiff has to payment" requires that payment be sought from "the court in which the representation occurs." *Id.* The *Shearin* court indicated that in the CJA, "[c]learly, the 'court' referred to is the court in which the representation occurs, not the Claims Court, which hears no criminal cases." *Id.* Also according to the *Shearin* court, the exclusive framework through which the plaintiff in that case could have sought compensation was the CJA, stating, "[i]t is well-settled that 'where a statute creates a right and provides a special remedy, that remedy is exclusive.'" *Id.* (quoting *United States v. Babcock,* 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011 (1919)).

In affirming the Claims Court's ruling in *Shearin,*[5] the United States Court of Appeals for the Federal Circuit joined those courts of appeals that concluded that a presiding judge's "fee determination under the CJA is an administrative rather than a judicial determination and, therefore, is not an appealable order under 28 U.S.C. § 1291." *Shearin v. United States,* 992 F.2d at 1196; *see also In re Carlyle,* 644 F.3d 694, 698–99 (8th Cir.2011) ("As far as I am aware, every circuit court of appeals and chief judge to consider the issue has held the CJA does not confer any appellate jurisdiction to review such an appeal and thus the district court's denial or reduction is unreviewable.... I likewise conclude the CJA does not confer appellate jurisdiction...."); *United States v. French,* 556 F.3d 1091, 1093 (10th Cir. 2009) ("[T]he district court has complete discretion, subject only to minimal review by the chief judge of the circuit." (citing *United States v. Stone,* 53 F.3d 141, 143 (6th Cir. 1995))); *Landano v. Rafferty,* 859 F.2d 301, 302 (3d Cir.1988) (holding that a district judge's decision to deny retroactive appointment is not appealable); *United States v. Rodriguez,* 833 F.2d 1536, 1537–38 (11th Cir. 1987) ("We agree with the Seventh and Ninth Circuits that fee determinations under the Criminal Justice Act are not appealable. The Act itself makes no provision for appeal of such determinations. Rather, the Act confers upon the presiding judge or magistrate the discretion to set the amount of compensation so long as it is under the statutory maximum."); *In re Gross,* 704 F.2d 670, 673 (2d Cir.1983) ("[T]he chief judge of a circuit has no power to entertain an appeal from a denial of certification of excess payment by the court in which the representation is rendered or to award compensation in an amount more than that certified by that court."); *In re Baker,* 693 F.2d 925, 927 (9th Cir.1982) (holding that a District Court Judge's fee certifications are a non-reviewable administrative act); *United States v. Lynch,* 690 F.2d 213, 213–14 (D.C.Cir.1982) (transferring a request for reconsideration to the court before which the services were rendered); *United States v. Smith,* 633 F.2d 739, 740–42 (7th Cir.1980) ("This statutory scheme clearly requires that appropriate awards of compensation are left to the dis-

---

beyond establishing a schedule for their submission and consideration.

4. CJA appointments are integrally related to criminal proceedings, over which this court lacks jurisdiction. *See Joshua v. United States,* 17 F.3d at 379 (noting the "specific civil jurisdiction" of the Court of Federal Claims); *see also Mendes v. United States,* 88 Fed.Cl. 759, 762, *appeal dismissed,* 375 Fed.Appx. 4 (Fed.Cir.2009).

5. The United States Claims Court was redesignated as the United States Court of Federal Claims in the time between the Claims Court's ruling in *Shearin* and the Federal Circuit's consideration of the Claims Court's decision on appeal. *See* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516.

cretion of the court which has had the opportunity to view the proceedings first hand."), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981); *United States v. D'Andrea*, 612 F.2d 1386, 1387 (7th Cir.1980) (holding that a petition for rehearing is the appropriate remedy when a judge has allowed or certified compensation less than requested). In addressing the jurisdiction of the Court of Federal Claims, the Court of Appeals for the Federal Circuit agreed that the CJA affords a statutory remedy that "preempts a more general remedy," a principle the court found "especially applicable where jurisdiction is founded on the Tucker Act because of concerns about sovereign immunity." *Shearin v. United States*, 992 F.2d at 1196. The Court of Appeals for the Federal Circuit concluded that the Court of Federal Claims lacks jurisdiction over claims concerning CJA fee determinations, which must be decided by the presiding tribunals. *Id.* at 1197.

As described above, on January 4, 2012, Chief Judge Jones issued the Continuity and Payment Order, authorizing payment of $205,000.00 of the $845,588.48 plaintiff requested in its September, October, and November 2011 vouchers, pending Judge Hittner's certification of plaintiff's November 2011 voucher. Pursuant to 18 U.S.C. § 3006A(e)(3), the Continuity and Payment Order marked the final determination on plaintiff's compensation for services rendered during September, October, and November 2011. The Continuity and Payment Order did not determine payment for services rendered after November 2011, but did establish a timeline for the submission and consideration of vouchers for those services. With respect to compensation for services rendered after November 2011, plaintiff concedes that Chief Judge Jones was acting within her authority when she issued the Continuity and Payment Order and issued a notice of a contempt hearing to plaintiff. Moreover, despite plaintiff's assertion that "it was forced to work against its will with no promise of future payment," the Continuity and Payment Order did not deny plaintiff the opportunity to file requests for compensation for its future services. In fact, Chief Judge Jones made clear in the Continuity and Pay-

ment Order that, prior to plaintiff's attempted resignation, plaintiff "ha[d] been assured that further compensation would be available" and that, with respect to plaintiff's future services, "[r]equests for compensation pursuant to the Criminal Justice Act will be considered" according to a clearly specified timetable included in the Continuity and Payment Order.

Plaintiff indicates in its amended complaint that it continued to submit vouchers for services rendered after the Continuity and Payment Order was issued, but provides no information regarding the disposition of those vouchers beyond plaintiff's declaration that, "[i]n sum, Marcum was left with $1,204,422.18 in unpaid fees" after submitting its final voucher for payment. Plaintiff alleges in its amended complaint, and acknowledges in its response to defendant's motion to dismiss, that the process by which consultants appointed under the CJA are compensated for their services is "governed by the CJA." Any compensation due to plaintiff for services plaintiff rendered after the entry of the Continuity and Payment Order must continue to be determined in accordance with the CJA, not by entertaining an alleged takings claim that seeks review of the District and Circuit Courts' compensation decisions.

As defendant argues in its motion to dismiss, relying upon *United States v. D'Andrea*, 612 F.2d 1386, plaintiff's only recourse for any review of the Chief Judge's decision was to file a motion for reconsideration with Chief Judge Jones or a petition for a writ of mandamus at the Supreme Court. In *D'Andrea*, the Court of Appeals for the Seventh Circuit held that it lacked jurisdiction because:

[W]hen the chief judge of the circuit has approved compensation or reimbursement less than that amount certified by the court in which the representation was rendered, counsel may request reconsideration by motion. However, this motion is addressed solely to the chief judge. Upon disposition of the request for the chief judge to review his decision, further review of the chief judge's decision is not available from this Court and any counsel's further

remedy lies in a mandamus action in the United States Supreme Court.

*Id.* at 1387–88; *see also United States v. Obasi*, 435 F.3d 847, 852 (8th Cir.) ("[A] determination by the chief circuit judge can only be challenged by seeking reconsideration or mandamus in the Supreme Court."), *reh'g and reh'g en banc denied* (8th Cir. 2006).

In the case currently before this court, plaintiff has availed itself of the remedies provided. Plaintiff indicates that it filed an *ex parte* emergency motion for reconsideration before Chief Judge Jones, along with a petition for a writ of mandamus in the United States Supreme Court, both of which were apparently denied. Plaintiff also filed an emergency motion for stay and, in the alternative, a petition for a writ of mandamus, challenging the requirement that plaintiff continue working on Mr. Stanford's case, in the United States Court of Appeals for the Fifth Circuit, which was dismissed. *See generally In re Marcum L.L.P.*, 670 F.3d 636. The Court of Appeals for the Fifth Circuit stated that, although plaintiff "does not appeal the actual amount of funds awarded, the Order has nevertheless been issued pursuant to the Chief Judge's authority under the CJA. As such, we have no jurisdiction to consider its merits." *Id.* at 638. The Court of Appeals for the Fifth Circuit held that "[w]hether the Chief Judge erred in issuing such an order can be resolved, if at all, only by the Supreme Court." *Id.*

Because plaintiff's claim filed with this court challenges the Continuity and Payment Order, issued by the Chief Judge of the Court of Appeals for the Fifth Circuit and the determinations of plaintiff's compensation pursuant to the CJA, this court lacks jurisdiction to review plaintiff's claim. Plaintiff may not circumvent the compensation framework Congress enacted in the CJA by attempting to frame its complaint as an alleged Fifth Amendment takings claim in the Court of Federal Claims.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss plaintiff's amended complaint is **GRANTED**. Plaintiff's amended complaint is **DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**